UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

SIERRA SUMMIT, LLC,

Plaintiff,

v.

HUMPHREYS & PARTNERS
ARCHITECTS, NEVADA, LLC,

Defendant.

Case No.: 3:25-cv-00511-MMD-CLB

ORDER

## I.   SUMMARY

Plaintiff Sierra Summit, LLC ("Sierra Summit") sued Defendant Humphrey & Partners Architects, Nevada, LLC ("HPA") for economic damages arising from HPA's professional architectural services provided under contract for the design of a multi-family apartment complex. (ECF No. 1 ("Complaint").) Sierra Summit asserts four claims: (1) breach of contract; (2) breach of implied covenant; (3) negligence; and (4) gross negligence. (*Id.* at 14-21.) Before the Court is Defendant HPA's motion for judgment on the pleadings on Plaintiff's second, third, and fourth claims.[1] (ECF No. 25 ("Motion").) As explained below, the Court grants the Motion because Plaintiff's claims are not cognizable, as they are barred by Nevada's economic loss doctrine.

## II.   RELEVANT BACKGROUND[2]

This case arises out of architectural design services provided for a commercial construction project and involves allegations of a design firm's deficient performance under contract. Plaintiff Sierra Summit is a Nevada/California limited liability company, and Defendant HPA is a Texas limited liability company and licensed multi-family

---

[1]Plaintiff responded (ECF No. 28), and Defendant replied (ECF No. 29).

[2]The following facts are undisputed unless otherwise noted.

architectural design firm. (ECF No. 1 at 1-2.) In September 2016, Sierra Summit contracted with HPA to construct a multi-family, luxury apartment complex in Reno, Nevada known as "INOVA" (the "Project") consisting of 581 rental units and associated common-area buildings. (*Id.* at 2.) Sierra Summit then filed suit against HPA, alleging that it breached contractual obligations[3] through its failure to "coordinate with the prime contractor and subcontractor," "timely integrate the professionals' plans into the architectural plans," "respond to the prime contractor and subcontractors' requests for information," and "address the City of Reno's concerns and identified deficiencies in the architectural plans," resulting in the delayed construction of the Project. (*See id.* at 5-11.) In addition to delays and the below-described alleged negligent conduct, Sierra Summit alleges that it "had to retain the services of a local Reno architect to help mitigate the harms caused" by Defendant HPA. (*Id.* at 10, 21.)

Sierra Summit further alleges that HPA breached the implied covenant of good faith and fair dealing in the following four ways: (1) by permitting "unlicensed interns" to "manage" and "supervise" the Project; (2) by maintaining no meaningful "physical presence" on-site; (3) by not placing any "qualified personnel" on site in Reno during the construction phase, and (4) by relying on "formulaic" and "copyrighted" designs without updating them to comply with applicable building codes. (*Id.* at 15-16.)

As to the negligence and gross negligence claims, Sierra Summit alleges the following. As a licensed design professional, Defendant HPA owed Sierra Summit a "duty of care to perform its design and related work on the Project in a manner consistent with the applicable standard of care," i.e., "the professional skill and care that ordinarily would be provided by architects practicing in the Reno, Washoe County, Nevada, area, and under the same or similar circumstances, on the same or a similar Project." (*Id.* at 16-17.) Sierra Summit alleges that the design firm's performance was negligent and fell below

---

[3]In its Complaint, Sierra Summit cites to multiple provisions of the agreement, including, in pertinent part, Section 3.1.1.: "The Architect shall manage and be responsible for the Architect's services, consult with the Owner, research applicable design criteria, attend Project meetings, communicate with members of the Project team and report progress to the Owner." (ECF No. 1 at 3.)

the applicable standard of care for the same four reasons mentioned above. (*Id.* at 17-21.)

The Complaint asserts four claims for relief under Nevada law: (1) breach of contract; (2) breach of implied covenant; (3) negligence; and (4) gross negligence. (*Id.* at 14-21.) Plaintiff seeks general and specific damages, as well as pre- and post-judgment interest and fees and costs, for the alleged errors in design services. (*Id.* at 21.)

**III.    DISCUSSION**

HPA moves for a judgment on the pleadings in its favor as to Sierra Summit's second, third, and fourth claims under Federal Rules of Civil Procedure 12(c)[4] on the basis that, under Nevada law, the claims are barred by the economic loss doctrine, which prevents design professionals from being sued for non-intentional tort-based claims, absent personal injury or "other property" damage. (ECF No. 25 at 4-5; ECF No. 29 at 3.) In response, Sierra Summit argues that the doctrine does not apply for two reasons: (1) its negligence claims arise from independent, "common law duties"; and (2) its breach of implied covenant claim sounds in a contractual, as opposed to tortious, basis. (ECF No. 28 at 2-3.) The Court agrees with Defendant HPA. The Court addresses HPA's Motion first as to the challenged negligence claims and then as to the contract-based claim.

**A.    Claims 3 and 4 – Negligence**

In its Motion, Defendant generally argues that, under Nevada law, the economic loss doctrine bars Sierra Summit's negligence claims and no exceptions[5] apply (ECF No. 25 at 6-9; *see also* ECF No. 29 at 3, 7), while Plaintiff counters that the doctrine does not

---

[4]"Because a Rule 12(c) motion is functionally identical to a Rule 12(b)(6) motion, the same standard of review applies to motions brought under either rule." *Gregg v. Hawaii, Dep't of Pub. Safety*, 870 F.3d 883, 887 (9th Cir. 2017) (internal citation and quotations omitted). "A judgment on the pleadings is properly granted when, taking all the allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law." *Id.* (internal citation and quotations omitted).

[5]The economic loss doctrine bars tort liability absent personal injury or property damage, subject to limited, traditionally recognized exceptions for certain categories of claims (e.g., intentional tort, defamation, injurious falsehood). *See Terracon Consultants W., Inc. v. Mandalay Resort Grp.*, 206 P.3d 81, 90 (Nev. 2009) (citing *Barber Lines A/S v. M/V Donau Maru*, 764 F.2d 50, 55-56 (1st Cir. 1985)) ("Negligence claims against design professionals do not fall within those traditional exceptions[.]").

3

apply because the negligence claims, which it frames as "non-contractual breaches," are based on "duties imposed by law" and conduct independent of the contract (ECF No. 28 at 10-11). Plaintiff further argues that a carve-out provision of the contract holds HPA responsible for its "negligent acts and omissions." (*Id.* at 11-12 (citing ECF No. 1 at 4).) The Court agrees with Defendant HPA.

Preliminarily, both parties agree that Nevada law recognizes the well-established economic loss doctrine. (ECF No. 25 at 4, 6; ECF No. 28 at 2.) "Under the economic loss doctrine 'there can be no recovery in tort for purely economic losses.'"[6] *Calloway v. City of Reno*, 993 P.2d 1259, 1263, 1266 (Nev. 2000) (internal citation omitted) (holding that the economic loss doctrine applied to constructional defect cases), *overruled on other grounds by Olson v. Richard*, 89 P.3d 31, 31-33 (Nev. 2004). In *Calloway*, the Nevada Supreme Court held that "economic losses are not recoverable in negligence absent personal injury or damage to property other than the defective entity itself." *Id.* at 1267 (internal citations omitted); *see also Local Joint. Exec. Bd. v. Stern*, 651 P.2d 637, 638 (Nev. 1982) (holding that the doctrine's purpose is "to shield [defendants] from unlimited liability for all of the economic consequences of a negligent act, particularly in a commercial or professional setting, and thus to keep the risk of liability reasonably calculable"). The policy rationale behind the doctrine is that "in the context of engineers and architects," "contract law is better suited to resolve professional negligence claims," absent any personal injury or property damage. *See Terracon*, 206 P.3d at 89-90.

Here, Defendant HPA argues that the *Calloway* Court's holding expressly bars Sierra Summit's negligence claims and points to *Terracon Consultants W., Inc. v. Mandalay Resort Grp.*, 206 P.3d 81, 90 (Nev. 2009) (extending *Calloway* to design professionals, e.g., engineers and architects, in the commercial-property-development context) to support its position. (ECF No. 25 at 7-8.) Specifically, HPA argues that

---

[6]In *Calloway*, the Nevada Supreme Court defines "purely economic loss" as "the loss of the benefit of the user's bargain ... including ... pecuniary damage for inadequate value, the cost of repair and replacement of the defective product, or consequent loss of profits, without any claim of personal injury or damage to other property." *Id.* at 1263 (internal citation omitted).

because Sierra Summit seeks "purely economic losses" from its design professional for alleged errors in design services, its claims of negligence and gross negligence are barred by the doctrine. (*Id.* at 8.)

Sierra Summit counters that its claims fall outside the doctrine because they arise from independent duties imposed by law—namely, HPA's obligation as a licensed design professional to meet an applicable standard of care—rather than from the parties' contract. (ECF No. 28 at 10-11 (citing *Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 873, 879 (9th Cir. 2007)) (holding that the economic loss doctrine "does not bar recovery in tort where the defendant had a duty imposed by law rather than by contract").) To drive home this point, Sierra Summit attempts to characterize the four above-mentioned bases for its negligence claims (i.e., HPA's unprofessional project management and supervision, lack of on-site presence, and reliance on outdated copyrighted designs that failed to comply with building codes) as "non-contractual breaches," which it contends arise from duties not expressly contained in the contract. (*Id.*) The Court is, however, unpersuaded by this argument and finds these bases to be sufficiently intertwined with the same duties and obligations governed by the parties' contract, which include the architect's duty to manage its services, consult and communicate with the owner, research design criteria, and report progress.[7] (*See* ECF No. 1 at 3.)

Although Plaintiff suggests otherwise (*see* ECF No. 28 at 13), the Court agrees with Defendant that the alleged losses—including project delays and the costs associated with retaining a third-party local architect—are purely economic in nature and do not constitute "personal injury" or "property damage" of any kind. As such, the Court finds that Defendant has met its burden[8] of showing that such losses are "properly remediable only

---

[7]Plaintiff further contends that the economic loss doctrine is inapplicable because a contractual "carve-out" provision holds HPA responsible for its "negligent acts and omissions." (ECF No. 28 at 11-12.) The Court is likewise unpersuaded by this argument.

[8]The moving party bears the burden of establishing that, "on the face of the pleadings[,]" no material issue of fact remains to be resolved and that it is entitled to

in contract." *See Giles*, 494 F.3d at 873, 876 (9th Cir. 2007) (holding that tort claims amounting to "nothing more than a failure to perform a promise contained in a contract" are barred by the economic loss doctrine).

Accordingly, taking all allegations in the pleadings as true[9], the Court finds that Defendant HPA is entitled to judgment as a matter of law, as Plaintiff's negligence claims are barred by the economic loss doctrine.[10]

### B.     Claim 2 – Breach of Implied Covenant of Good Faith and Fair Dealing

Defendant HPA further argues that it is entitled to judgment on the pleadings on Plaintiff's breach of implied covenant claim because, although pleaded by Plaintiff as contractual, the claim sounds in tortious negligence and is therefore barred by the economic loss doctrine. (ECF No. 25 at 9-11.) Plaintiff counters that the claim should be construed as contract-based and thus should not be subject to the doctrine. (ECF No. 28 at 8-9.) Again, the Court is unconvinced by Plaintiff's argument.

As explained above, the economic loss doctrine precludes recovery for "purely economic losses" arising from unintentional torts. *See Terracon*, 206 P.3d at 86 (internal citation omitted). Moreover, the doctrine "prevents a plaintiff from asserting contract claims 'cloaked in the language of a tort.'" *Bank of America v. Bailey*, Case No. 2:14-cv-885-JCM-GCF, 2016 WL 3410174, at *4 (D. Nev. June 15, 2016) (citing *Giles*, 494 F.3d

judgment as a matter of law. *MST Mgmt., LLC v. Chicago Doughnut Franchise Co., LLC*, 584 F. Supp. 3d 923, 935 (D. Nev. 2022) (internal citations omitted).

[9]Judgment on the pleadings is proper when, "taking all the allegations in the non-moving party's pleadings as true," the moving party is entitled to judgment as a matter of law. *See, e.g., Ventress v. Japan Airlines*, 486 F.3d 1111, 1114 (9th Cir. 2007) (internal citation omitted); *see also Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009 (holding that the Court must "accept all factual allegations in the complaint as true and construe them in the light most favorable to the non-moving party").

[10]Having determined that the economic loss doctrine bars Plaintiff's negligence claims against Defendant HPA as a matter of law, and that no exception applies, the Court need not—and does not—address Plaintiff's argument that judgment on the pleadings is "inappropriate" because "material issues of fact remain." (ECF No. 28 at 7-8.) This is because, even accepting Plaintiff's well-pleaded factual allegations as true and drawing all reasonable inferences in Plaintiff's favor, *see, e.g., MacDonald v. Grace Church Seattle*, 457 F.3d 1079, 1081 (9th Cir. 2006), the negligence claims remain barred as a matter of law, seeing as there are no allegations of personal injury or property damage in the Complaint.

at 872). Here, as Defendant HPA points out, Plaintiff's second claim, although framed as contractual, alleges negligent, non-intentional conduct. (ECF No. 25 at 10.) For example, in its Complaint, Plaintiff asserts that Defendant HPA's "negligent breaches of the implied covenant of good faith and fair dealing" constitute the direct and proximate cause of Plaintiff's damages and lists multiple instances of the "negligent" conduct. (*Id.* at 10-11 (citing ECF No. 1 at 16).) Accordingly, the Court finds that Defendant HPA is entitled to judgment as a matter of law as to Plaintiff's second claim for breach of implied covenant because this claim, as pled, sounds in tort. However, the Court grants Plaintiff leave to amend its Complaint to assert a contractual breach of the implied covenant of good faith and fair dealing.

### C.    Leave to Amend

Plaintiff asks for leave to amend in the event the Court grants judgment on the pleadings in Defendant HPA's favor on the second, third, and fourth claims. (ECF No. 28 at 14.) In particular, Plaintiff asks for leave to amend the Complaint to incorporate the four above-mentioned "non-contractual breaches" into its first claim for breach of contract. (*Id.*) The Court should give leave to amend freely when justice requires, though leave need not be granted where amendment: "(1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile." *Amerisource Bergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006) (internal citation omitted). Because the Court cannot find that amendment is futile, the Court grants Plaintiff leave to file an amended complaint to amend its contract-based claims.

### IV.    CONCLUSION

The Court notes that the parties made several arguments and cited several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion, as they do not affect the outcome of the issues before the Court.

It is therefore ordered that Defendant's motion for judgment on the pleadings (ECF No. 25) is granted.

It is further ordered that Plaintiff is granted leave to amend the Complaint to amend its contract-based claims within 15 days. Failure to file an amended complaint will result in the case proceeding on the first claim for breach of contract.

DATED THIS 20th Day of March 2026.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE